UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NORBERTO LOPEZ,

        *Plaintiff,*

  -against-

CITY OF NEW YORK, WALIUR RAHMAN,
Individually, and JOHN and JANE DOE 1 through 10,
Individually,

        *Defendants.*

24-CV-6281 (ARR) (LKE)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

    Plaintiff, Noberto Lopez, brings this civil-rights action under 42 U.S.C. § 1983 and New York state law against defendants the City of New York ("the City") and several members of the New York City Police Department ("NYPD"), including Officer Waliur Rahman and other unnamed officers. Plaintiff's claims arise from a June 9, 2023 arrest and criminal charge for allegedly violating an order of protection that was held by plaintiff's upstairs neighbor. Defendants move to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I grant the motion in part and deny it in part.

## BACKGROUND

    The following facts are drawn from the Complaint (Compl., ECF No.1), and those documents relied upon so heavily that they are "integral" to the Complaint.[1] *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020). For the purposes of deciding this motion, the factual allegations in the complaint are accepted as true. *Melendez v. City of New York*, 16 F.4th 992,

---

[1] As explained below, I consider defendants' Exhibit A on the basis of integrality. (*See infra* Section I.A.)

1010 (2d Cir. 2021).

Plaintiff is a fifty-three-year-old man who, on the date of the relevant events, resided at 130-35 126th Street in Ozone Park, Queens. (Compl. ¶¶ 6, 12.) Another individual named Alan Jennings Jr. lived upstairs in the same building. (*Id*. ¶ 13 (referring to "upstairs neighbor"); *see* Saleemi Decl. Ex. A, ECF No. 17-2 (copy of order protection issued in case no. CR-004352-23QN).) On or around February 14, 2023, a state court judge issued a temporary order of protection pursuant to Section 530.13 of the New York Criminal Procedure Law requiring plaintiff to, *inter alia*, "stay away from" Jennings and Jennings's residence. (*Id*.) According to plaintiff, the order of protection permitted plaintiff to continue to reside in at the 126th Street residence and have "incidental contact" with Jennings. (Compl. ¶ 14.)

On June 9, 2023, at approximately 11:50 a.m., multiple NYPD officers, including defendant Officer Rahman, responded to a report that plaintiff had been observed at the 126th Street residence, allegedly in violation of the order of protection. (Compl. ¶¶ 12–13.) When the officers arrived, plaintiff avers that he presented the officers with "proof" that the order of protection permitted his presence at or near that location. (*Id*. ¶ 14.) Defendants nonetheless handcuffed and arrested plaintiff and transported him to the NYPD's 106th Police Precinct. (*Id*. ¶ 15.) Officer Rahman signed a criminal complaint charging plaintiff with violating an order of protection. (*Id*. ¶¶ 19–20; *see id*. ¶ 15 (providing Queens County case number).) Plaintiff was detained at the precinct overnight and arraigned the following day, June 10, 2023, in Queens County Criminal Court. (*Id*.) Plaintiff was released that afternoon, around 3:00 or 4:00 p.m., following his arraignment and directed to return to court on June 26, 2023. (*Id*. ¶ 17.) When plaintiff returned to court on June 26, all charges stemming from the June 9 incident were dismissed and sealed. (*Id*. ¶¶ 17–18.) Plaintiff alleges that multiple unnamed individuals

participated in or oversaw his arrest and detention in addition to Officer Rahman. (*See id*. ¶¶ 13–14, 21.) Plaintiff alleges that the actions of those individuals reflect longstanding deficiencies in officer training and supervision of NYPD officers. (*Id*. ¶¶ 22–27.)

Plaintiff commenced this action on September 7, 2024. Plaintiff asserts five federal causes of action (hereafter "Counts") against the individual officer defendants: false arrest and imprisonment ("Count 1"), violation of the right to fair trial ("Count 2"), malicious prosecution ("Count 3"), failure to intervene ("Count 4"), and supervisory liability for all the above ("Count 5"). (*Id*. ¶¶ 33–53.) Plaintiff also asserts a *Monell* claim against the City, alleging that the actions of the individual officers reflect the official policies or customs of the NYPD ("Count 6"). (*Id*. ¶¶ 54–63.) *See Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that local government units may be sued directly under §1983 when the alleged injury is caused by a municipal policy, practice, or custom). Finally, plaintiff asserts eight supplemental state law claims for false arrest ("Count 7"), assault ("Count 8"), battery ("Count 9"), malicious prosecution ("Count 10"), negligent hiring ("Count 11"), negligent training and/or supervision ("Count 12"), negligence ("Count 13"), and violation of New York City's Administrative Code, sections 8-801 through 8-807 ("Count 14"). (*Id*. ¶¶ 64–107.) Defendants filed the instant motion to dismiss on June 24, 2025. (Defs.' Mem. L. Supp. Mot. Dismiss, ECF No. 17-5 ("MTD"); *see also* Pl.'s Mem. L. Opp'n Mot. Dismiss, ECF No. 18 ("Pl.'s Opp'n"); Defs.' Reply Supp. Mot. Dismiss, ECF No. 19 ("Defs.' Reply").)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Cnty of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing whether a

claim is "plausible," I must accept the factual allegations contained in the complaint as true and "draw all reasonable inferences in favor of the plaintiff." *Melendez*, 16 F.4th at 1010 (quotation marks and citation omitted). At the motion-to-dismiss stage, my task is "to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.

Assessment of a motion to dismiss is generally limited to the pleadings, which include "facts stated on the face of the complaint," and "documents appended to the complaint or incorporated in the complaint by reference[.]" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted). However, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted). Additionally, in limited circumstances, I may "consider matters of which judicial notice may be taken" under Federal Rule of Evidence ("FRE") 201. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citation omitted); *see* FRE 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

## DISCUSSION

### I. External Documents

As a threshold matter, I must determine which, if any, materials extrinsic to the Complaint I may consider in resolving the motion to dismiss. Defendants urge me to consider three different documents related to plaintiff's arrest on the grounds that they are either incorporated by reference or matters of which judicial notice may be taken. (MTD 13–16.) Plaintiff opposes consideration

of any material outside the Complaint. (Pl.'s Opp'n 3–7.) Having reviewed all three documents alongside the Complaint, I have determined that I may consider one copy of the order of protection, but not the other two documents.

### A. The order of protection

Defendants first request that I consider two different versions of the order of protection restricting contact between plaintiff and Jennings. (MTD 11.) The first version ("Exhibit A") is a copy of the order that defendants aver plaintiff showed to the officers at the time of his arrest. (MTD 7; *see* Saleemi Decl. ¶ 3; Saleemi Decl. Ex. A, ECF No. 17-2 ("Exhibit A").). Exhibit A is formatted as a form with several fields, including the case number, name of the judge, and date, filled in by hand. (*Id.*) In the section that sets forth the places and persons from which plaintiff was ordered to stay away, Exhibit A includes a handwritten alteration that is difficult to make out, but appears to read "subject to incidental contact." (*Id.*) The second version ("Exhibit B") is a document that defendants aver was electronically retrievable by the officers at the time of the arrest. (MTD 7; Saleemi Decl. ¶ 4; Saleemi Decl. Ex. B, ECF No. 17-3.) Exhibit B is fully typed and does not include any modifications to the standard conditions or make any mention of "incidental contact." (*Id.*)

Defendants provide three bases on which I might consider both versions of the order of protection:

First, defendants argue that both versions of the order of protection were incorporated into the Complaint by reference. (MTD 11–12.) For a document to be incorporated by refence, the complaint must make a "clear, definite and substantial reference to the document." *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 293 (E.D.N.Y. 2025) (citation omitted). Here, the Complaint makes a clear and definite reference to the fact that a judicial order of protection was

5

in effect at the time of the arrest (*see* Compl. ¶¶ 13–14), but does not explicitly reference either of the *documents* appended by defendants. Contrary to defendants' characterization, the Complaint does not state that plaintiff "provided a *copy of the order* permitting incidental contact." (MTD 12 (emphasis added).) It merely states that he "presented proof . . . that the order of protection . . . permitted plaintiff to continue reside in his home as well as incidental contact." (*Id*. ¶ 14.) While it is certainly plausible that the "proof" to which the Complaint refers is Exhibit A, I cannot assume as much looking within the four corners of the Complaint. As for Exhibit B, the Complaint makes no mention of the fact that the officers viewed or had access to a different version of the order of protection, let alone that the officers' version omitted the handwritten modification concerning incidental contact. Accordingly, I may not consider either document on the grounds that it was incorporated by reference.

Second, defendants argue that I may consider both versions of the order of protection because they are "integral" to the Complaint. (MTD 13.) A document is considered "integral" to the complaint where the plaintiff "(1) has 'actual notice' of the document and its information and (2) has 'relied upon the documents in framing the complaint.'" *McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016) (quoting *Chambers*, 282 F.3d at 153). Even if a document meets these two requirements, it cannot be considered unless it is "clear on the record" that there is no dispute regarding the document's accuracy, authenticity, or relevance to the case. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see, e.g.*, *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608–609 (E.D.N.Y. 2019) (declining to consider documents where their relevance to the case is unclear).

Here, plaintiff does not dispute that the document proffered as Exhibit A is an accurate and authentic copy of the order that was in his possession on the day of the arrest. (*See* MTD 7 n.1

6

(stating that Exhibit A was produced to defendants by plaintiff); Pl.'s Opp'n 9–10 (describing Exhibit A as "the limited order of protection which has the notation that incidental contact was permitted" and citing to description of document in Complaint).) Plaintiff also appears to concede relevance of Exhibit A in briefing by acknowledging that he presented the officers with "an order of protection which stated that incidental contact was permitted." (*Id*. at 9.) He argues that document was "sufficient to vitiate probable cause" (*id*.), and render his subsequent arrest, detention, and prosecution unconstitutional. (*See* Compl. ¶¶ 15, 16, 20.) I therefore conclude that plaintiff relied so heavily on the "terms and effects" of Exhibit A that it is "integral to the complaint." *Chambers*, 282 F.3d at 153 (citation omitted). As there is no dispute regarding authenticity, relevance, or notice, *see Faulkner*, 463 F.3d at 134, I will consider Exhibit A in resolving the instant motion.

The same cannot be said for Exhibit B. The Complaint makes no mention of a conflicting version of the order that was available to or relied upon by the officers. Nor does plaintiff concede in briefing that the officers consulted an electronic version of the order that omitted the handwritten alteration. (Pl.'s Opp'n 5, 9.) *See Regeda v. City of New York*, No. 09-CV-5427, 2012 WL 7157703, at *2–3 (E.D.N.Y. Sept. 7, 2012) (declining to consider public records when their existence did not "parallel the allegations in the complaint"), *R&R adopted*, 2013 WL 619567. As such, I cannot consider Exhibit B on the basis of integrality.

Finally, defendants argue that I may consider Exhibit B on the grounds that it is a matter public record of which judicial notice may be taken under FRE 201. (MTD 14.) *See Karcz v. City of N. Tonawanda,* No. 20-CV-1045, 2023 WL 2744836, at *5 (W.D.N.Y. Mar. 7, 2023) ("Orders of protection are also matters of public record of which a court may take judicial notice."), *R&R adopted*, 2023 WL 2743917, at *5; *Daniels v. City of New York*, No. 03-CV-0809, 2004 WL

7

1161231, at *2 (S.D.N.Y. May 24, 2004) (same). While I may take notice of documents filed in a different court case, I may consider them only "to establish the fact of such litigation and related filings"—not "for the truth of the matters asserted in [that case][.]" *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)); *see also Reid v. City of New York*, No. 20-CV-9243, 2022 WL 2967359, at *7 (S.D.N.Y. July 27, 2022) (discussing the propriety of taking judicial notice of documents related to a criminal case). Given those parameters, I decline to take judicial notice of Exhibit B for three reasons. First, as plaintiff points out, Exhibit B is not clearly a "public record," as it was allegedly taken from "the NYPD's system" (MTD 14), rather than the official public docket. (Pl.'s Opp'n 5.) *See Prime Contractors, Inc. v. APS Contractors Inc.*, 754 F. Supp. 3d 289, 303 (E.D.N.Y. 2024) (collecting cases on judicially noticeable litigation documents). Second, the purpose for which defendants offer Exhibit B—to contradict plaintiff's allegations regarding the information available to the arresting officers (MTD 17–18)—falls outside the purview of what I may consider at this stage since I must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth. Of New York & New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014). Finally, because the existence of the underlying court case is uncontested (*see* Compl, ¶ 14) and is clearly established by Exhibit A, there are no additional facts that I might glean from considering Exhibit B at this stage in the litigation.

### B. 50-h testimony

Defendant also requests that I consider the transcript of a hearing conducted on August 2, 2024 pursuant to section 50-H of the New York General Municipal Law. (MTD 15–16.) *See Przybyla v. Cnty. of Suffolk*, No. 09-CV-5129, 2017 WL 1274051, at *2 (E.D.N.Y. Mar. 3, 2017)

8

(discussing "examination" requirement set forth in N.Y. Gen. Mun. L. § 50-h). During that hearing, plaintiff was questioned about the events of June 9, 2023 by a lawyer representing the City. (Saleemi Decl. Ex. C, at 11–36, ECF 17-4.) Plaintiff also testified about the dispute with the Jennings family that preceded issuance of the order of protection and the confusion that ensued surrounding the incidental contact provision. (*See id*. 27–33.) Defendants claim that plaintiff must have "relied on" the transcript to "craft" the language of the Complaint "strategically," to "avoid[] mention of the reason" that his case was not dismissed sooner. (MTD 16.)

The standard for assessing whether to consider a 50-h transcript on a motion to dismiss is the same as for any other extrinsic document. *See Serrata v. Givens*, No. 18-CV-2016, 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019). The "weight of authority in this circuit excludes 50-h hearing testimony from consideration on a motion to dismiss unless there is evidence that the plaintiff relied on the 50-h hearing testimony in drafting her complaint." *Doe v. City of New York*, No. 18-CV-670, 2018 WL 3824133, at *5 (E.D.N.Y. Aug. 9, 2018).

Here, the Complaint does not reference the 50-h hearing or the testimony given therein. Nor does the substance of the Complaint, which sets forth a short and simple narrative of plaintiff's arrest, overnight detention, and arraignment, include details that suggest plaintiff relied on the transcript. (*See* ¶¶ 12–20.) I see "no reason to believe that the plaintiff relied on the transcript of his own testimony, rather than his independent recollection of the events[.]" *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006). Defendant's assertion that the complaint impermissibly "obscure[s]" the evidence (MTD 16), is unsupported by the record. Accordingly, I decline to consider the 50-h transcript.

## II.   False Arrest & Malicious Prosecution Claims

Plaintiff asserts claims for false arrest (Count 1) and malicious prosecution (Count 3)

pursuant to 42 U.S.C. § 1983 and New York state law (Counts 7 and 10). Defendants move to dismiss these claims on the basis that there was probable cause to arrest the plaintiff for apparently violating the order of protection or, alternatively, that the officers are entitled to qualified immunity on the basis of "arguable probable cause," *see Cerrone v. Brown*, 246 F.3d 194, 202–203 (2d Cir. 2001) (explaining arguable probable cause). Taking the allegations in the complaint as true, I find that, at this stage in the litigation, defendants have not met their burden to establish a probable cause or qualified immunity defense.

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). For both, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense[.]" *Id*. (citation omitted). Probable cause to arrest is generally "established where 'the arresting officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 196 (E.D.N.Y. 2010) (quoting *Finigan v. Marshall,* 574 F.3d 57, 62 (2d Cir.2009) (alternation adopted)). Probable cause is also a complete defense to a claim for malicious prosecution. *See Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016). The probable cause standard for malicious prosecution "is slightly higher than the standard for false arrest[.]" *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). In the context of a claim for malicious prosecution, probable cause has "been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003).

While the existence of probable cause is generally a fact-intensive question, it may be determined "as a matter of law if there is no dispute as to the pertinent events and the knowledge

10

of the officers[.]" *Barkai v. Mendez*, 629 F. Supp. 3d 166, 191 (S.D.N.Y. 2022) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also* Silver v. Kuehbeck, 217 F. App'x 18, 22 (2d Cir. 2007) ("[C]ourts may grant a pre-answer motion to dismiss on the basis of [probable cause] where such defense appears on the face of the complaint."). In any case, "[a] defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest" and subsequent prosecution. *McLennon*, 171 F. Supp. 3d at 87. Here, because neither party alleges facts that came to light after the arrest to dissipate probable cause, plaintiff's false arrest and malicious prosecution claims must rise or fall together. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571–72 (2d Cir. 1996) (discussing possibility that "intervening facts" that may "eliminate" probable cause). (*See* MTD 17–19; Pl.'s Opp'n 10.)

In this case, the critical question is whether the existence of the order of protection, including the alteration, was adequate to establish probable cause as a matter of law. As defendants point out, it is often the case that a police officer's awareness of an extant order of protection, combined with an eyewitness allegation that such an order was violated, is enough to establish probable cause to make an arrest. *See, e.g.*, *Coyle v. Coyle*, 354 F. Supp. 2d 207, 211–12 (E.D.N.Y. 2005), *aff'd*, 153 F. App'x 10 (2d Cir. 2005); *Dudley v. Torres*, No. 05-CV-1729, 2008 WL 2149603, at *5 (E.D.N.Y. May 21, 2008). Indeed, "courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *Carthew*, 709 F. Supp. 2d at 197. That said, a reported violation of an extant order of protection is not dispositive. "Where there are circumstances which give rise to doubts as to the [reporting person's] veracity, the officer may need to investigate further." *Allen v. Leonard*, No. 18-CV-7163, 2020 WL 4587752, at *9 (E.D.N.Y. Mar. 3, 2020) (quotations and citation omitted), *R&R adopted*, 2020 WL 2537280. In such circumstances, "the officer's 'failure to make further

11

inquiry when a reasonable person would have done so may be evidence of lack of probable cause[.]'" *Sherman v. City of New York*, No. 18-CV-5359, 2019 WL 2164081, at *8 (E.D.N.Y. May 16, 2019) (quoting *Carlton v. Nassau Cty. Police Dep't*, 761 N.Y.S.2d 98, 99 (App. Div. 2003)).

Taking plaintiff's allegations as true, defendant officers were aware of several pieces of information that might have caused them to doubt the veracity of the report against plaintiff. First, the fact that plaintiff resided at the location listed in the order of protection gives rise to an inference that his presence alone was not enough to constitute a violation. Second, plaintiff avers that he acknowledged the order's existence, but presented the officers with an official document clarifying that "incidental contact" was permitted. (Compl. ¶ 14.) While it is not clear from the Complaint what, if any, steps the officers took to investigate plaintiff's explanation or verify the operative terms of the order of protection, I must draw all reasonable inferences in plaintiff's favor at this stage. *Biswas v. City of New York*, 973 F. Supp. 2d 504, 511 (S.D.N.Y. 2013). Accordingly, I assume the officers took no additional investigative steps prior to making the arrest. I also assume that, because the case against plaintiff was ultimately dismissed (Compl. ¶ 18), the operative order of protection *did* in fact permit plaintiff's presence at the 126th Street residence, and that a reasonable investigation by the arresting officers would have revealed as much. Drawing those inferences, I conclude that the Complaint sufficiently alleges circumstances that would have led a reasonable person to have made further inquiry into the operative terms of the order of protection and/or plaintiff's conduct before making an arrest, thereby defeating the existence of probable cause.

Defendants' argument that they had "arguable probable cause," (MTD 18), fails for the same reason. "Because the evidence supporting a finding of qualified immunity is normally

12

adduced during the discovery process and at trial, the defense of qualified immunity usually cannot support the grant of a [Rule 12(b)(6)] motion for failure to state a claim." *Kanciper v. Lato*, 989 F. Supp. 2d 216, 231 (E.D.N.Y. 2013) (alteration adopted and citation omitted). As the Second Circuit has explained, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). In such situations, the defense must not only appear on the face of the complaint; "the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id*. (internal quotation marks and citation omitted). Here, I can certainly imagine a set of facts that plaintiff could prove that would establish the absence of probable cause. Accordingly, I am "presently unable to make a determination, as a matter of law, that plaintiffs do not have a plausible claim that would enable them to overcome the defense of qualified immunity and entitle them to relief." *Anilao v. Spota*, 774 F. Supp. 2d 457, 492 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022).

Accordingly, the motion to dismiss is denied with respect to Counts 1, 3, 7, and 10.

### III.    Right to a Fair Trial

Plaintiff asserts a claim for denial of a fair trial (Count 3) based on alleged fabrication on evidence. (*See* Compl ¶¶ 19–20, 37–41.) Because plaintiff has not alleged any specific piece of evidence was fabricated, the claim is dismissed.

To state a § 1983 claim "based on fabrication of evidence," a plaintiff must show, *inter alia*, that an investigating officer "fabricate[d] evidence" that would be "likely to influence a jury's verdict" and that the officer "forward[ed] that information to prosecutors." *Jackson v. Nassau*

13

*Cnty.*, 552 F. Supp. 3d 350, 373–74 (E.D.N.Y. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Here, plaintiff alleges that Officer Rahman fabricated evidence when he swore the criminal complaint attesting that plaintiff was observed in violation of the order of protection. (*Id.* ¶ 20.) Importantly, plaintiff does not dispute Officer Rahman's representation of the situation he observed—namely that plaintiff was present at the address of Mr. Jennings—just the applicable terms of the operative order of protection. (*See id.* ¶¶ 12–13.) Such representations are not "evidence" that would be likely to influence a jury's verdict because it is the actual terms of the order, not the officer's interpretation of those terms, upon which a verdict of contempt—i.e. knowingly violating a judicial order—would be based. *See Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 285–86 (E.D.N.Y. 2018) (discussing definition of criminal contempt under New York law). In other words, even if Officer Rahman's statement was incorrect, it would have been legally irrelevant.

## IV. Failure to Intervene & Supervisory Liability

Plaintiff asserts claims against unnamed individual officers who allegedly played role in the alleged constitutional deprivations by "fail[ing] to intervene" in his arrest and prosecution (Count 4) and "failing to properly supervise and train" subordinate officers (Count 5). (Compl. ¶¶ 48, 52.) I address these claims in turn.

### A. Failure to intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted). Where a plaintiff has sufficiently pleaded a primary constitutional violation and

14

the presence of multiple officers, he is generally permitted to proceed to discovery to determine the roles and identities of the different officers who were present and failed to intervene. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 392–93 (S.D.N.Y. 2021) (collecting cases). Here, plaintiff has adequately pleaded a claim for false arrest that occurred in the presence of multiple officers. (*See* Compl. ¶¶ 12–15.) While he will ultimately need to "refine [his] allegations with regard to the roles played by each of the [i]ndividual [d]efendants," *Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017), he is entitled to proceed with discovery "to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012). The motion to dismiss therefore is denied with respect to Count 4.

### B. Supervisory liability

Supervisory liability may be "imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Rogoz v. City of Hartford*, 2012 WL 4372189, at *8 (D. Conn. Sept. 24, 2012) (citation omitted). The Second Circuit has explained that, in order to establish supervisory liability, a plaintiff must plead and prove that supervisory official participated in the constitutional deprivation "through the official's *own individual actions*[.]" *Tangreti v. Bachmann*, 983 F.3d 618 (2d Cir. 2020) (emphasis added) (quoting *Iqbal*, 556 U.S. at 676). In other words, the mere fact that the official held a "supervisory role" at the time of the alleged deprivation is not enough., 552 F. Supp. 3d at 376. Here, the Complaint does not identify any specific supervisory officials and contains only conclusory allegations that unnamed officers "fail[ed] to properly supervise and train their subordinate employees." (Compl. ¶ 9.) "Such conclusory allegations, devoid of any detail as to how [the supervisory official] actually participated in the alleged constitutional violations, are

15

insufficient to state a claim for supervisory liability." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at \*12 (S.D.N.Y. Mar. 9, 2017). Count 5 is therefore dismissed.

### V. *Monell* Claim

Pursuant to *Monell* plaintiff brings a § 1983 claim against the City for inadequate screening, hiring, retention training, and supervision (Count 6). (Compl. ¶¶ 54–63.) This claim is utterly unsupported with relevant factual allegations and is therefore dismissed.

"Because municipalities may not be held vicariously liable for the actions of their employees, a § 1983 claim against a municipality must be premised on the theory that the municipality maintained a policy, practice, or custom that caused the plaintiff's constitutional injury." *Moran v. Cnty. of Suffolk*, No. 11-CV-3704, 2015 WL 1321685, at \*9 (E.D.N.Y. Mar. 24, 2015). A plaintiff may demonstrate the existence of an actionable policy or practice by, *inter alia*, showing that the officer's conduct was "part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or by establishing a failure to provide adequate training that "rises to the level of deliberate indifference." *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 392 (S.D.N.Y. 2009). For a *Monell* claim to survive a motion to dismiss, the plaintiff must state specific facts that support, at least circumstantially, the inference that the alleged custom or policy existed. *Montero v. City of Yonkers, New York,* 890 F.3d 386, 403–404 (2d Cir. 2018); *see also Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) ("[T]he Second Circuit has made clear that Plaintiff must do more than merely state that the municipality's failure to train caused his constitutional injury.").

Here, the Complaint contains several broad assertions regarding the City's hiring, retention, supervision, and training practices. (Compl. ¶¶ 26, 56–58.) The most specific allegations

16

are (1) that the City "failed to properly train its employees with regard to proper investigatory methods and the probable cause required to make an arrest" (*id*. ¶ 56), and (2) that the City "is aware" of deficiencies in its training based on other lawsuits and civilian complaints (*id*. ¶ 23). These conclusory recitations are insufficient to allege a municipal custom or policy. *See Rivera v. City of New York*, 785 F. Supp. 3d 1, 2–3 (E.D.N.Y. 2024) (discussing level of specificity required to plead policy or custom based on widespread practice or failure to train).

As the Supreme Court has explained, a *Monell* plaintiff is generally required to show "a pattern of similar constitutional violations by untrained employees" in order to establish deliberate indifference "for the purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Here, the only reference to other arrest incidents is plaintiff's citation to a 2009 case involving allegations of false arrests by undercover NYPD officers whose conduct was motivated by department productivity goals. (*Id*. ¶ 24 (quoting *Colon v. City of New York,* 2009 WL 4263362, \*2 (E.D.N.Y. 2009)).) Except for the fact that both plaintiffs were arrested by the NYPD, the allegations in *Colon* are entirely dissimilar to this case. Even accepting the assertion that *Colon* evinces the City's awareness of certain kinds of police misconduct, it is irrelevant to assessing the adequacy of officer training regarding the verification of judicial orders. To plead deliberate indifference, a plaintiff must allege that city policymakers were on notice of a "*particular* omission in their training program that caused city employees to violate citizens' constitutional right" in the manner alleged in the complaint. *Connick*, 563 U.S. at 61 (emphasis added).

## VI. State Law Claims

In addition to the federal constitutional claims and state law equivalents, plaintiff brings state claims for assault (Count 8); battery (Count 9); negligent screening, hiring, and retention (Count 11); negligent training and supervision (Count 12); negligence (Count 13); and violation

17

of New York City Administrative Code § 8-801 through 8–807 (Count 14). Defendants move to dismiss on basis that I should decline to exercise supplemental jurisdiction. (MTD 22–23.) Because I have ruled that plaintiffs' claims for false arrest and malicious prosecution may proceed, I decline to dismiss the other state law claims on that basis. Instead, I dismiss plaintiff's negligence claims against the City—Counts 11, 12, and 13—because they are clearly unsupported by sufficient factual allegations and likely fail as a matter of law. *See Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (discussing district court's "discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6) . . . where it is clear that a plaintiff could not have prevailed on the facts alleged in the complaint).

"There are two ways that a municipal employer can be held liable for negligence based on the acts of an employee." *Baumeister v. Erie Cnty.*, No. 23-CV-1150, 2024 WL 4362311, at *13 (W.D.N.Y. Sept. 30, 2024). If the employee allegedly acted negligently within the scope of employment, the employer may be liable "only under a theory of *respondeat superior*." *Velez v. City of New York*, 730 F.3d 128, 137 (2d Cir. 2013). "A claim for negligent hiring or supervision, on the other hand, can only proceed against an employer for an employee acting outside the scope of her employment." *Baumeister*, 2024 WL 4362311, at *13 (internal quotation marks and citation omitted). Here, plaintiff attempts, but fails, to allege both types of liability.

First, plaintiff alleges that the City was negligent in its screening, hiring, retention training, and supervision of defendant officers. (Compl. ¶¶ 92–98.) As pleaded, those claims fail as a matter of law because plaintiff expressly states that "all of the acts of the defendants alleged" occurred "within the scope of their employment by [the City]." (*Id.* ¶ 11.) "To maintain a claim against a municipal employer for negligent hiring, training, and supervision of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of employment when

18

committing the tort." *Cerbelli v. City of New York*, No. 99-CV-6846, 2008 WL 4449634, at *24 (E.D.N.Y. Oct. 1, 2008) (internal quotation marks and citation omitted). Separately, plaintiff's claims for negligent hiring and supervision fail because the Complaint does not state any facts to support the inference "that the [City] 'knew or should have known of the employee[s'] propensity for the conduct which caused the injury' prior to the injury's occurrence." *Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997)). As I have already explained in the context of the *Monell* claim, the Complaint makes only conclusory allegations regarding the City's awareness of problematic conduct by police officers. (*See* Compl. ¶ 23.) Such threadbare allegations are insufficient to state a claim.

Second, plaintiff seeks to hold the City liable for employee negligence on a *respondeat superior* theory. (Compl. ¶ 99–102.) "*Respondeat superior* is not an independent cause of action, but a theory that must attach to an underlying claim." *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011). In order to hold the City vicariously liable for negligence, therefore, there must be a valid underlying claim of negligence against the employee-officers. *See Velez*, 730 F.3d at 137 ("[I]f the employee was not negligent, there is no basis for imposing liability on the employer [under a theory of *respondeat superior*]." (quoting *Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 1997)). Plaintiff has no viable underlying claim of negligence because the conduct alleged in the Complaint—namely the arrest, confinement, and filing of charges against plaintiff—is all intentional. *See Bah v. City of New York*, No. 13-CV-6690, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) ("Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence.").

Accordingly, Counts 11, 12, and 13 are dismissed.

19

## VII. Leave to Amend

In briefing, plaintiff requests leave to amend any deficiencies identified in the pleadings. (Pl.'s Opp'n 17.) Defendant does not take a position on the issue. Without reviewing the substance of plaintiff's proposed revisions to the Complaint, it is impossible for me to evaluate whether leave to amend would be proper under Federal Rule of Civil Procedure 15(2). Plaintiff may file a proposed amended complaint, along with a motion setting forth the basis for granting leave to amend, within thirty days of the date of this order.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED with respect to Counts 2, 5, 6, 11, 12, and 13. The motion is DENIED with respect to Counts 1, 3, 4, 7, 8, 9, 10, and 14. Should plaintiff seek leave to amend the complaint, he may file a motion, along with a proposed amended complaint, within thirty days.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated: October 17, 2025
Brooklyn, New York